We'll hear the first case on calendar. Cole-Hoover v. Reddy. Good morning. Good morning. May it please the Court, Mr. Boser, Ms. Richmond. My name is Anthony A. Boyagis, and I represent the plaintiff Gwendolyn Cole-Hoover appellant with respect to this appeal from two orders of the trial court with respect to attorney's fees. I think you must be about the eighth or ninth lawyer in this case. Ten. Yes, yes, hopefully the last. Three. So this case— Another dispute over your fees. I don't think so. In any event, the case settled on November 5th, which was about five to six weeks after Prathima Reddy entered her notice of appearance in this case. She had two problems, as I see it, that she faced when she took over this case. One was getting ready for trial, and the other was trying to negotiate a settlement. That's correct. There was no indication at all that the case would settle. Quite to the contrary, prior to that. That's correct. And, of course, what happened was the case did settle. And on November 5th, in open court, the settlement was placed on the record, $750,000 settlement, release of all defendants, and dismissal of four actions that were all similarly related. There was no delay in getting the settlement straightened out, because there was after that. There was a delay, and the delay was about a year, and ultimately the magistrate simply entered a judgment memorializing, essentially, the exact same terms that were put on the record on November 5th a year earlier. Was it just your client? I'm sorry, Your Honor? Did both parties have a problem with the settlement as announced in court, or was it just your client? I don't think it was my client that had the problem with the settlement that was announced in court on November 5th of 2012. I think it was the defendants who tried to inject several other provisions, which my client was not willing to do. Ultimately, the fact that my client's position was the correct one is borne out by the fact that, number one, a year later the trial court simply entered judgment with all of those same terms that my client had agreed to in open court. And, secondly, on the initial appeal, this court affirmed that judgment without my client so much as filing a brief. Ultimately, we need— That sounds like a pretty good result. It is a good result. Lawyers who got that might even have been entitled to a premium. It is a good result, Your Honor, there's no doubt. But the heart of the attorney-client relationship is the retainer agreement, and in this case—and, of course, the attorney has a fiduciary duty to the client. In this case, the agreement that the parties had was that there was going to be $25,000 to prepare for trial and $25,000 to settle the case. This is a matter of— It's not refundable, so that it was against New York policy. That's correct. And then, paradoxically, what they bargained for, which would have been a fee of at the most $50,000, got turned into triple that at over $150,000 through the decision of the lower court, which is—it's strange that we're trying to enforce our disciplinary rules by saying, well, no, no, you're not going to get this $50,000 even though that's what you bargained for, but instead— —remains in the hands of the disciplinary authorities. If a lawyer agrees to have a nonrefundable retainer illegal under Cooperman, and it's a discounted amount, and it's challenged, and instead the payment is based on quantum merit, it may very well be more. Right. And that, to me— Right. It just seems to me, Your Honor, that when the parties have agreed to a fee, for the court to essentially say, I'm not going to enforce that fee, and, of course, you're right, the disciplinary rules are separate and distinct. However, to me, it is very paradoxical that she could end up with three times the fee. I think that the— It sounds like a mere irony rather than any legal error that you've identified. Our position is that the court misinterpreted the retainer agreement, Your Honor, and that's a matter of law that Your Honors are free to address de novo. The record is replete with this $25,000 for one part, $25,000 for the other part, $50,000 total, in several instances. She makes clear—again, she, meaning Ms. Reddy, makes clear in a letter to predecessor counsel four days after the settlement that she doesn't have a contingency fee agreement, and yet there is one in the retainer agreement. And also, any ambiguity, of course, would have to be construed against the attorney. She then, at Joint Exhibit 106, in a certification, makes very clear what her understanding was. And I'm quoting. She says, I stated to her, meaning Ms. Reddy stated to Dr. Cole, that I would need an upfront retainer amount of $25,000 to prepare for trial and $25,000 to reinitiate discussions to settle her case. Now— Who did expressly state that it was nonrefundable? It did expressly state that. And because of that one hyphenated phrase, somehow this turns into a triple payday for her. And that, I think, is a problem. I also wanted to direct the Court's— Rewrite the agreement? I'm sorry? Would you like us to rewrite the agreement? I would like you to— Read the fact that it's refundable out of it? Yes, that's what I'm asking. I'm saying that it should be blue-penciled out. The understanding of the parties is what should govern here. And it was, again, additional proof at Joint Exhibit 150, an affidavit whose provenance is a little uncertain. I'm not sure if Ms. Reddy prepared that or if my client prepared that. But that was generated because the defendants— that somehow the retainer agreement really should control. But you're not quarreling with the amount of the quantum merit, are you? I am quarreling with the amount of the quantum merit as well. Now, of course, this is a different standard. This is governed by the abuse of discretion standard. But the court basically reduced Ms. Reddy's fee request when, in fact, to me, we shouldn't have even gotten to quantum merit because that's only available if there's no agreement between the parties. But turning my attention to the quantum merit— But New York has held. I'm sorry? New York has held that a nonrefundable fee agreement is void. Yes. So there's no agreement. As far as the—I can turn to the quantum merit argument. The question really is what was the reasonable value of those services? And in this case, the bulk of the work was done in the 36 days between her notice of appearance and the settlement. The fact that when we look at the records—and my arguments are more clearly spelled out in the paperwork— there was duplicative billing, there was a reconstruction of the electronic record for some reason when the ECF has a perfectly adequate way of accessing all of the documents in the case. Our position is that the amount of quantum merit should not have been as high, and it should have been significantly lower than that. And essentially, that's the same argument with respect to Ms. Richmond and Mr. Fitzgerald's where paradoxically there as well— So what are the problems that you have with the billing accommodated by the 10 percent reduction? Well, in the case of Ms. Richmond, the judge first took it upon himself to increase her request by 10 percent and then subtract 10 percent, so that was illusory. That was an arithmetic error, was it not? Well, maybe it was, but it wasn't what was submitted. If it's an arithmetic error, you don't proceed with a judgment based on a mistake. Right. And again, with respect to those matters for Mr. Fitzgerald and Ms. Richmond, there was what looks to us to be double billing in the sense that two people were sent for conferences, two people were sent for depositions, two people were preparing for things, which was not necessary. They didn't split the questioning of anything as far as I understand it. There was no reason for two people to be staffing this matter, and for that reason, I would suggest that a 30 percent reduction would have been more appropriate rather than a 10 percent. I'm not looking for a 50 percent reduction. Under New York law, under Cooperman, is a retainer agreement that contains a nonrefundable retainer, what is void? Is it the nonrefundability clause or is it the entire contract? I think it's the nonrefundable nature of the retainer. And what the Court could do is say you're— And your authority for that distinction. I know that's your argument. Right. I'm just asking what the authority is for that. It's the authority is the way that ambiguity in a retainer agreement is construed against the drafter and certainly against the attorney. There's no ambiguity here. It's a perfectly clear contract that has an illegal term. Well, it's not perfectly clear when you consider the other sources that confirm that she was looking for $25,000 for this and $25,000 for that, which was both my client's understanding as outlined in that affidavit and her understanding as she put forth in her certification. You've reserved rebuttal, I think. I have. Thank you so much, Your Honor. Thank you. May it please the Court, my name is Alan Boser and I represent the appellee in cross-appellant Prathima Reddy. My client urges the Court to uphold the award of attorney's fees, but by her cross-appeal to modify the award by restoring the 10 percent reduction, perhaps on a theory that there should be a premium in this case for what Ms. Reddy went through, thus increasing the award to $173,100. Before I go further, Judge Walker, I'd like just to address Cooperman momentarily. The Court of Appeals in that case said that a non-refundable retainer agreement is not enforceable. That is, the entire agreement is not enforceable. But in Cooperman, the Court of Appeals went on to say that Quantum Merowit, quote, will still be available, end quote. Quantum Merowit is an equitable doctrine, correct? Yes, Your Honor. Your adversary's argument could be looked at many different ways. One of them is, where's the equity that a layman signs an agreement with a lawyer, which limits her exposure to attorney's fees, and the lawyer makes a mistake, does something that is improper and should know it's improper, and as a result of that, the lawyer gets three times what the lawyer could have gotten under the illegal contract. Why is that not an equitable consideration that should have been built into the Quantum Merowit award? Your Honor, I think we go back to Cooperman, where it said that the agreement itself is not enforceable, but Quantum Merowit will be available to the practicing attorney. In other words, what did the attorney earn by her efforts? May I note to the Court that the First Department, less than a month ago, when Magia Gonzalez v. Storch ruled or referred to Cooperman again, and said that an attorney is, quote, entitled to Quantum Merowit for services actually rendered. That decision was on March 9, 2017. Your approach seems to me that there are misaligned incentives. I'm in a beauty contest to get hired as counsel. I lowball it with a nonrefundable retainer. I get the business, and then, lo and behold, once it comes around to fee time, the sky's the limit. These other attorneys who would have taken the business for somewhat more than my nonrefundable amount are out in the cold, and I'm home free. Your Honor, that description certainly does not apply to this case. Hypothetically. Hypothetically. I'm trying to figure out where your theory goes. My theory, Your Honor, is that Quantum Merowit, being an ethical theory, looks at the case in a very practical way and looks at what was accomplished by the attorney, what went into the attorney's work. Aren't the judge, going through the Quantum Merowit analysis, as Judge Jacobs said, aren't I obligated to think hard about how we got to Quantum Merowit in the first place? The only way we get to Quantum Merowit is on the back of an illegal agreement. It's an unenforceable agreement, yes, Your Honor, and the judge who rules upon it will look at the case. He's in the best position to look at the case and then make a ruling as to what was actually earned, and he has to take into consideration a number of factors, all of which I've looked at, reviewed in the brief, the most important of which, I believe, is what was accomplished by the attorney. In this case, with this panel looking on, you can see that Prathima Reddy, my client, accomplished what four magistrate judges, four prior attorneys, and a professional mediator over ten years of work were unable to accomplish. Even if your client worked a miracle, the fact is that Dr. Cole Hoover entered into this with the understanding that her attorney's fees would be capped at $50,000, and you're really saying that because that was unethical on your client's part, Dr. Cole Hoover couldn't possibly have known one way or the other, but because it was unethical on your client's part, your client now is doing well while doing wrong. May I address that, Your Honor, by saying this, that the written agreement that was signed by the client and presented to the court with her signature on it had an initial clause which said a nonrefundable retainer of $50,000, $25,000 to prepare for trial and $25,000 to settlement, and then went on to say plus one-third of any recovery. There's no question that this is an unenforceable agreement. However, it wasn't that she had a view of $50,000. If you divide up the agreement, which I submit, you can't take some terms and accept them, in other terms you cannot, and may I point out to the court that my client moved the district court below to blue pencil the agreement to strike the offending language, and Judge McCarthy turned her down, but you can't just take some terms and apply it. Moreover, if you look at these terms, if it was $25,000 to prepare for trial, $25,000 to initiate settlement, what happens if you don't get a settlement and you go to trial? Is the attorney then not to work any further because she didn't agree to do anything but prepare for trial and to initiate? I don't know. I didn't draft the agreement. Which is why, Your Honor, the court properly set aside the agreement under Cooperman. It had the offensive language in it. Ms. Reddy apologized to the court for having done that. $25,000 and or $25,000 plus one-third of any recovery? Yes, Your Honor, which, by the way, Your Honor, is the same sort of agreement that the prior attorney had, Mr. Pendergrass, who was fired. With ten attorneys, if everybody takes a third, you end up with an impossibility. Dr. Cull Hoover gets nothing. Well, at the end of the day, Your Honor, Dr. Cull Hoover got two-thirds, I believe, and that's what Judge McCarthy looked at in the way he had figured all of the fees involved. Dr. Hoover has done very well by what Ms. Reddy brought about. The theory under Cooperman is that we set aside these agreements as unenforceable because you do not want to chill the ability of a client to fire an attorney and hire a new attorney. It's important New York policy on that basis. This does not apply to the plaintiff in this case, who fired Mr. Pendergrass, who had a non-refundable agreement that had the one-third on top of it, and that's right there at Special Appendix page 9 and 10. There was an unenforceable agreement beforehand, and this client was not chilled whatsoever. The most important thing that Ms. Reddy did in coming in, in addition to doing a service to the court, and may I observe that at oral argument on the underlying judgment, when it was suggested to send the case back to the magistrate judge, one of the judge's remarks I heard on the record is saying, that would be cruel and unusual punishment to send this case back again. And the reason is, it had been going on for 10 years, taking up a lot of valuable court time, and what Ms. Reddy did achieved a significant result. Under Quantum Merowit, you look at the result first before going further, and what she achieved was very significant. And Judge Parker, you mentioned, does this deserve a premium? You know, the Supreme Court in the Purdue case said that enhancement of the load star, that is the presumptively reasonable fee, can be appropriate at times. And in this case, we have married an attorney with outstanding abilities to bring parties together, and it's based on a track record in this case that went over 10 years, where so many people were unable to resolve the case. Thank you, Your Honor. Ms. Richmond. Thank you, Your Honor. Good morning. May it please the Court. I am here on behalf of both myself and Mr. Fitzgerald. The district court reduced our fees by 10% in response to Dr. Kohlhuber's initial argument that our fees should be reduced by 75%. They are now moving for a 30% reduction, which is 20% over what the district court reduced us by. The district court did not abuse its discretion, Your Honor. Judge McCarthy's decision discusses our work, Dr. Kohlhuber's sophistication, the risk we faced. We submit that there was no error of factor law in Judge McCarthy's decision, and I'm here to answer questions if the Court has any. I would hope that the Court would uphold Judge McCarthy's well-reasoned decision and leave our fee where it is. Did Judge McCarthy give particulars for particular overcharges or dubious charges that justify the 10%? Or was this pulled out of the air? It wasn't out of the air, Your Honor. What he did first was to say, to look at some specific things. There was an error if there were 14 hours in one of my time records that was wrong, that I withdrew. But he looked at certain errors. He looked at the fact that there were two lawyers, and he looked at the amount of the complexity and said he wasn't going to go through it piece by piece. There are the . . . if the Court has reviewed . . . No, Your Honor. Dr. Cole Hoover's whatever lawyer it was, I guess it would be six. The ones after Ms. Reddy who . . . You were eight? No, we were two. There was . . . Matticola handled it from 2000 to 2006. Mr. Fitzgerald had been representing Dr. Cole Hoover on other things. We had it from . . . not 2000. Yeah, 2006. We had it. And you were number two. Mr. Fitzgerald and I together were number two. Then there was Mr. Pendergrass who took it. We essentially did discovery. Mr. Pendergrass took it through summary judgment. And then Ms. Reddy, she fired Mr. Pendergrass a month or two before trial, I think. And then Ms. Reddy . . . And then she hired another large firm in Buffalo to oppose our attorney fee motions, and Mr. Pendergrass's attorney fee . . . I don't think it was Ms. Reddy's. I don't remember that point. But in any event . . . What justified the 10% and not the 15% or 7%? He didn't go through it in detail, Your Honor, but he did point to various things. And what I was going to say is that the motion that was brought contains significant comparisons of our work. He . . . where the work was doubled. Judge McCarthy essentially referred to other case law and looked at our records. There was no specific, I'm looking at this, I'm looking at that, I'm looking at the other thing. Thank you. Thank you. Thank you, Your Honors. Your Honor, I will waive my rebuttal time. Thank you. Thank you all. We will reserve decision.